**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ROBERT JONES,**

       **Petitioner,**

**v.**                                **Case No. 4:13cv303-RH/CAS**

**JULIE L. JONES, Secretary,
Department of Corrections,[1]**

       **Respondent.**

_____/

## <u>REPORT AND RECOMMENDATION TO DENY § 2254 PETITION</u>

On May 17, 2013, Petitioner Robert Jones, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, with attached exhibits.   ECF No. 1.   On December 9, 2013, Respondent filed an answer, with exhibits, ECF No. 8, and Petitioner filed a reply on January 15, 2014, ECF No. 9.   After direction by this Court, Respondent filed an amended answer on April 19, 2016.   ECF No. 18.   Petitioner filed an amended reply on June 6, 2016.   ECF No. 22.

---

[1]The Clerk of Court shall substitute Julie L. Jones, as Secretary of the Florida Department of Corrections, for Michael D. Crews.   Julie Jones became Secretary on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).   After careful consideration of all issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.   *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.   For the reasons stated herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief, and this § 2254 petition should be denied.

## Background and Procedural History

By information filed December 5, 2006, in Gadsden County Circuit Court case number 06-00754CF, the State of Florida charged Petitioner, Robert Jones, with one count of armed robbery with a firearm, a first degree felony punishable by life, in violation of sections 775.087 and 812.12(2)(a), Florida Statutes, in connection with events that occurred November 15, 2006.   ECF No. 8 Ex. A at 13.[1]   Jones proceeded to a jury trial on October 29, 2007.   Ex. B.   Jones did not testify.   *Id.* at 54.   The

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 8.

jury found him guilty as charged.   *Id.* at 93-94.   In a judgment and sentence rendered December 18, 2007, the court adjudicated Jones guilty and sentenced him to life in prison, as a Prison Releasee Reoffender (PRR), with a ten-year minimum term.   Ex. A at 25-32; Ex. C at 4-5.

Jones appealed his conviction and sentence to the First District Court of Appeal (DCA), assigned case number 1D08-1046, arguing the trial judge abused his discretion by not ordering a competency hearing prior to sentencing.   Ex. D (Initial Brief).   *See* Exs. E (Answer Brief), F (Reply Brief).   In an opinion issued January 8, 2009, the First DCA reversed and remanded "for a competency hearing and resentencing, if it is determined appellant is competent to proceed."   Jones v. State, 999 So. 2d 1092 (Fla. 1st DCA 2009); Ex. G.

On remand, two competency evaluations were done and both indicated Jones was competent to proceed.   Ex. J at 3-5.   On August 7, 2009, the court re-sentenced Jones as a PRR to life in prison.   Ex. I at 9-16; Ex. J at 20.

Jones appealed his resentencing to the First DCA, assigned case number 1D09-4030, and counsel filed a brief pursuant to Anders v.

California, 368 U.S. 738 (1967), asserting no issues of arguable merit

existed.   Ex. K.   Jones filed a pro se brief.   Ex. L.   On March 5, 2010, the

First DCA per curiam affirmed the case without a written opinion.   Jones v.

State, 29 So. 3d 1121 (Fla. 1st DCA 2010).   The mandate issued on

March 31, 2010.   Ex. M.

On June 10, 2010, Jones filed a pro se motion for post-conviction

relief pursuant to Florida Rule of Criminal Procedure 3.850 in the state trial

court; he filed a corrected Rule 3.850 motion on June 24, 2010.   Ex. N at

1-39, 40-80.   In a non-final order rendered July 1, 2010, the state post-

conviction court denied one ground, allowed two grounds to be amended,

and directed an evidentiary hearing take place on the remaining grounds.

Id. 81-84.   Jones filed an amended Rule 3.850 motion.   Id. at 164-81.

The court appointed counsel for Jones.   Id. at 182-86.   An evidentiary

hearing took place on November 5, 2010.   Ex. P (transcript).   In an order

rendered February 1, 2011, the court denied the amended Rule 3.850.

Ex. N at 188-89.

Jones appealed the denial of post-conviction relief to the First DCA,

assigned case number 1D11-1397, and counsel filed an Anders brief.   Ex.

Q.   By order on February 10, 2012, the First DCA struck the <u>Anders</u> brief

and directed Jones to file a pro se brief.   Ex. R.   Jones filed a pro se brief.

Ex. S.   The State filed a notice that it would not file an answer brief.   Ex.

T.   On August 29, 2012, the First DCA per curiam affirmed the case

without a written opinion.   Ex. V; <u>Jones v. State</u>, 98 So. 3d 572 (Fla. 1st

DCA 2012) (table).   The mandate issued on October 30, 2012.   Ex. W.

 As indicated above, Jones filed this § 2254 petition on May 17, 2013.

ECF No. 1.   (The paper copy of Jones' petition in the Court file contains

the petition's last page, which reflects he delivered the petition to prison

officials for mailing on May 17, 2013.)   Jones raises six grounds, all

alleging ineffective assistance of counsel (IAC):

    (1)   IAC – Trial counsel failed to advise Jones that if he did not
        accept the State's plea offer, the State would seek a PRR
        enhancement.   *Id.* at 5.

    (2)   IAC – Trial counsel failed to inform Jones of his right to
        testify.   *Id.* at 6.

    (3)   IAC – Trial counsel failed to object to the prosecutor's
        improper statements during opening and closing argument.
        *Id.* at 7.

    (4)  IAC – Trial counsel failed to conduct an adequate
        investigation.   *Id.* at 9.

(5)   IAC – Trial counsel failed to call Jason Smith to testify
during the trial.   *Id.* at 10.

(6)   IAC – Cumulative.   *Id.* at 11.

Respondent has filed an answer, with exhibits, and an amended answer.

ECF Nos. 8 and 18.   Petitioner has filed a reply, ECF No. 9, and an

amended reply, ECF No. 22.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody.   Section 2254(d)

provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not
> be granted with respect to any claim that was adjudicated on
> the merits in State court proceedings unless the adjudication of
> the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).   *See, e.g.,* <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398

(2011); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Gill v. Mecusker</u>, 633 F.3d

1272 (11th Cir. 2011).   "This is a 'difficult to meet' and 'highly deferential

standard for evaluating state-court rulings, which demands that state-court

decisions be given the benefit of the doubt.'"   <u>Cullen</u>, 131 S.Ct. at 1398

(quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011), and <u>Woodford v.

Visciotti</u>, 537 U.S. 19, 24 (2002)).   This Court's review "is limited to the

record that was before the state court that adjudicated the claim on the

merits."   <u>Cullen</u>, 131 S.Ct. at 1388.

For claims of ineffective assistance of counsel (IAC), the U.S.

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.   This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.   Second,
> the defendant must show that the deficient performance
> prejudiced the defense.   This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

<u>Strickland</u>, 466 U.S. at 687.   To demonstrate ineffectiveness, a "defendant

must show that counsel's performance fell below an objective standard of

reasonableness."   *Id.* at 688.   To demonstrate prejudice, a defendant

"must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.*   For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"   Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schiro v. Landrigan, 550 U.S. 465, 473 (2007)).   "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."   *Id.*   It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."   *Id.*

## **Ground 1:   IAC – Plea Offer**

In his first ground, Petitioner Jones argues his trial counsel provided ineffective assistance by failing to advise him that if he did not accept the State's plea offer, the State would seek a PRR enhancement.   ECF No. 1 at 5.   Jones raised this claim as the first ground in his corrected Rule 3.850 motion in state court, as one alleging his attorney was ineffective for failing to advise him of the potential PRR sentence during plea considerations.

Ex. N at 46-50.   The state post-conviction trial court granted an evidentiary

hearing on this ground and, following the hearing, denied relief:

> The defendant did receive effective assistance of counsel
> before, during, and after the trial.   The credible evidence that
> this Court finds is that the defendant was fully informed by his
> counsel of the plea offers tendered by the State prior to trial.
> Further that his counsel did not misadvise the defendant to not
> take a plea offer or as to the subsequent sentencing
> consequences if he was convicted at trial.   The credible
> evidence refutes the defendant's allegations in Grounds 1 and
> 2 of his Motion for Post Conviction Relief.

Ex. N at 188.   This ruling, affirmed on appeal without opinion, is entitled to

deference and review is limited to the record before the state court.   *See*

Cullen, 131 S.Ct. at 1388.

The record supports the state court's findings.   *See* Ex. P at 189.   In

particular, during the evidentiary hearing, Jones' trial counsel, Armando

Garcia, testified he discussed the plea offer with Jones and the sentencing

risk of not taking the plea, but Jones did not want to take the plea:

Q   And what was his response to your discussions with him?

A   He didn't want to take it.

Q   Did you suggest to him or tell him not to take the plea?

A   I pleaded with him to take it.

Q   You had received the discovery in this case.   And knowing
what he was facing as a prison releasee reoffender, did you talk

with him, the risk of not taking the plea?

A   Yes.

Q   The decision not to accept the plea offer, was that strictly Mr. Jones's decision then?

A   Yes.

Ex. P at 22-23.   The state post-conviction trial court properly determined the credibility issues, and the record supports the state court's findings. Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011) ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.").   "Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor was observed by the state court, but not by them.'" *Id.* (quoting Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).

Petitioner Jones has not shown that the state court's adjudication of this ground involved an unreasonable application of clearly established federal law or that it based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

## <u>Ground 2</u>:   IAC – Right to Testify

In his second ground, Petitioner Jones asserts defense counsel was ineffective for failing to inform him of his constitutional right to testify.   ECF No. 1 at 6.   Jones raised this claim as the third ground in his Rule 3.850 motion in state court.   Ex. N at 52-57.   After the evidentiary hearing, the state post-conviction trial court denied the claim:

> The Court finds that the credible evidence is that the defendant's attorney did fully advise the defendant of his right to testify.   The decision not to testify was a free, knowingly, and voluntary decision by the defendant.

*Id*. at 188.   This ruling, affirmed on appeal without opinion, is entitled to deference and review is limited to the record before the state court.   *See* <u>Cullen</u>, 131 S.Ct. at 1388.

The record supports the state court's findings.   During the trial, after the State rested its case and the jury had exited the courtroom, the following took place on the record:

> THE COURT:   Motions, Mr. Garcia?
>
> MR. GARCIA:   I'm not going to make any motions at this time.   I would ask the Court to allow me a few minutes to consult with my client before we proceed.
>
> THE COURT:   Okay.   So there is no motions in the case and you're ready to present testimony.

MR. GARCIA:   If I may have a few moments.

THE COURT:   How many witnesses might you have?

MR. GARCIA:   I might have one.

THE COURT:   Okay.   Well, take a –

MR. GARCIA:   Six minutes.

THE COURT:   You've never done anything in six minutes.

MR. GARCIA:   Seven.

(Laughter.)

THE COURT:   Go ahead.

(Brief recess.)

MR. GARCIA:   We're going to rest, Judge.   When we come back, when the jury comes back, I'll announce rest.

THE COURT:   You don't have any witnesses?

MR. GARCIA:   No, sir.

Ex. B at 54.   [During the subsequent jury charge conference, the judge

noted, "Now, this other thing here, we have the Defendant not testifying."

*Id.* at 58.   Then, the prosecutor stated, "Defendant testifying needs to be

taken out."   *Id.*]   During the evidentiary hearing, trial counsel testified:

Q   When it came time during the trial, at that time that the State
rested, did you discuss with Mr. Jones any decision as to

whether or not he wanted to testify?

A   I don't have a specific recall of talking to Mr. Jones about his testimony.   You know, I've talked to you on the phone a few days ago, I've talked to Mr. Harrison on the phone.   I just – I can't under oath say that I recall specifically having a conversation with Mr. Jones about his testimony.

Q   Let me show you a transcript and see if that refreshes your memory here.   It's just a portion of a transcript that was contained as a part of this motion in which you indicate to the Court that you may have one witness and then there's a pause, and then there's, you're not going to have a witness.   Was there any other witness?

A   This suggests to me that perhaps that one witness was Mr. Jones.

Q   Okay.   And since it goes from telling the Court you may have one witness to telling the Court you don't have one witness, in that intervening time, would that be the time you would have had the discussions with Mr. Jones as to whether or not he'd want to testify?

A   Perhaps so.

Q   If Mr. Jones had indicated he wanted to testify, would you have placed him on the stand?

A   Yeah, well, we would have – if he had told me he wanted to testify, I would have discussed that with Mr. Jones.   I probably would have tried to persuade him not to testify because I thought Mr. Jones would have been a terrible witness, plus he had a prior conviction I didn't want the jury to know about.   But if the question is if he would have said he wanted to testify, I knew by the time we tried this case in 2007 that Mr. Jones has an absolute right under the constitution to testify.   And if that was his decision then I would have honored that decision.

Q   So you would not have stood in his way, but you may have advised him not to give in to the idea of testifying?

A   That is correct.

Q   And in your practice, in your 150 jury trials, do you discuss with your clients whether or not they want to testify?

A   Yes.

Q   And is that something that you would consistently do in every jury trial?

A   It's a matter of routine practice.   I always discuss with my clients their right to testify.

Q   And the way the transcript reads there, since the transcript does not contain the specific conversation that you had, the attorney client privilege, but is that consistent with at that point in time you having a discussion with the defendant about whether he was going to testify?

A   Yes.

Q   And from the answer to discovery, there were no other defense witnesses listed other than Mr. Jones, is that correct?

A   I missunder –

Q   Okay, you say [in the trial transcript] that you may have one witness.

A   Yes.

Q   And is it correct that there were no other possible witnesses the defense would have called at that point in time other than Mr. Jones?

A   I don't recall there being any other witnesses.

Ex. P at 23-25.   The record thus supports the state post-conviction trial

court's finding that defense counsel discussed with Jones his right to testify

and he elected not to do so.

Jones has not shown that the state court's adjudication of this ground

involved an unreasonable application of clearly established federal law or

that it based on an unreasonable determination of the facts.   *See* 28

U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### <u>Ground 3</u>:   IAC – Prosecutor's Statements

In his third ground, Jones asserts defense counsel provided

ineffective assistance by not objecting to statements the prosecutor made

during opening and closing.   ECF No. 1 at 6-7.   He raised this claim as

the fourth ground in his Rule 3.850 motion.   Ex. N at 57-62.   The state

post-conviction trial court summarily denied this claim:

> Defendant claims counsel failed to object to various statements
> by the State during opening and closing statements that
> improperly influenced the jury and were prejudicial.   The record
> clearly refutes defendant's allegation of prosecutorial
> misconduct.   The State merely offered its opinion of what it
> expected the testimony to show and later summarized what, in
> the State's opinion, the State did show.   **See TR pages 9-13,
> 62-70.**   Ground 4 is summarily denied.   Counsel for defendant
> offered his own opinion that the State could not prove that a

crime had been committed or that Mr. Jones was the one who committed it.   **See TR pages 13-14, 70-75.**

*Id.* at 82. This ruling, affirmed on appeal without opinion, is entitled to

deference and review is limited to the record before the state court.   *See*

Cullen, 131 S.Ct. at 1388.

The record supports the state court's findings.   During opening

remarks, the prosecutor stated:

> Good morning, folks.   **The case you're about to hear is basically about two brothers who robbed their sister's boyfriend outside of her house.**   The case we're trying is one of the brothers, this defendant, Robert Jones.   The sister involved, her name is Scherryl Jones.   The other brother is Jason Smith.   And the boyfriend that got robbed is a man named Erron Lovett.   You're going to find out that this is not a complicated case at all.   As the judge has indicated, we have the opportunity to get up here and give what we call the opening statement.   The reason for that is, even if the case is not very complicated, the testimony does come in one witness at a time.
>
> One of the things I talked with you about last week when we picked the jury was that these are real people who are not always the most articulate individuals.   They are not like some actor with a script.   Sometimes it's a little hard to pay attention or follow everything that the witness is trying to communicate to you.   So the idea of an opening statement is basically give you an outline of what we expect the evidence will be so as witnesses testify, you'll have some understanding of the gist of it all so you can pay closer attention to the details of their testimony and hopefully you can absorb everything a whole lot easier.

Also, if both sides give an opening statement, sometimes it might help to narrow down the issues that might come up in a case like this.   They may be different than a similar case.   And if both sides give an opening, sometimes that can help the jury focus on whatever the particular issue is.   Indicated in our jury selection, this will be what we call a direct evidence case.   It's going to be based upon witness testimony.   This is not going to be one of those circumstantial evidence cases pieced together by bits and pieces.

One of the other things we talked about in the jury selection is my job is to present testimony that establishes certain specific facts.   And there is a lot of things that occur in any event that happens in human life.   What we're – in this type of situation, we're focused on some specific facts and those are the facts the judge will outline in what we call the elements of the crime.   You'll find out those are neither too many or that complicated either.   For the charge of armed robbery, what the State has to be able to show you through the testimony of the witnesses is that this Defendant took a wallet and/or telephone and/or money from the person or custody of one Erron Lovett.   That this taking was done by some force, violence, assault, or putting in fear, that the property had some value, not anything of particular value.   That the taking was done with the intent to permanently or temporarily deprive Mr. Lovett of the right to his property or the use or benefit of it. And finally in the course of the taking, the Defendant possessed a firearm.

The basic facts are going to come out to establish those elements are going to be as follows:   Mr. Erron Lovett and Scherryl Jones had been seeing each other for a few months before November 06 until recently Mr. Lovett was working over here at Quincy Chevrolet Buick.   Ms. Jones at that time was living with her parents on 4th Street in Havana.   She is currently not living there.   She is currently in the Department of Corrections so she was on probation at the time this event occurred, violated her probation and was sentence.

As I understand it, her brothers were not living there with the parents at the time.   This particular event occurred on November 15th of 2006.   It was some time in the late afternoon, 6:00 or so.   Mr. Lovett was over at Ms. Jones's residence.   He was inside with her and the other brother, Jason Smith, comes in and asks Mr. Lovett to come on outside, he wanted to talk for a minute.   Mr. Lovett goes outside, I believe it's the back door of this residence.   This is a long, thin house with the on the very side and the back door is actually at the back but on the side back.

Goes outside the back door, Ms. Jones stays inside at the time.   When Mr. Lovett gets outside, all of a sudden the Defendant, Robert Jones, comes up at him with a gun, puts it to him and says, Give me what you got.   Mr. Lovett initially thinks they're somewhat joking here but then realizes that they aren't.   Commotion develops.   He tries to snatch away.   I believe he's pushed against the wall.   The gun is held to him and Mr. Jones and his brother are demanding that he give it up it type of thing.

They then put their hands in his pockets and take out his wallet and his money, some loose money he had and a cell phone he had in his pocket.   And during this time, Scherryl Jones, she's inside but she hears this commotion and starts outside.   And she comes out the back door and sees her brothers digging into Mr. Lovett's pockets.   She yells at them to stop and, Don't do this.   They don't stop so she turns and goes inside and calls law enforcement, calls the Havana Police Department.   After she goes in, both the robbers then flee with the gun and the victim's property.

The Havana Police Department responds.   Mr. Lovett and Ms. Jones then report the robbery and who did this robbery.   Law enforcement looks around and they are unable to locate the robbers.   A warrant is issued and eventually they are, in fact, arrested.   **I expect Ms. Jones is going to testify, somewhat reluctantly because that is her brother here.**

**She, at that time, indicated she saw a gun.   She may claim
not it wasn't a gun that she saw.   But she will confirm, I
believe, that her brothers did, in fact, rob her boyfriend.**
And because of the acts she saw happening, she called law
enforcement to come out to the house.

Once again, this will be a direct evidence case which I
submit will show you beyond any reasonable doubt that this
Defendant was involved with his brother in the course of
committing a robbery of Mr. Erron Lovett on November the
15th, 2006.   I ask that you pay close attention to the testimony.
It won't be complicated.   I don't think there will be that many
issues that will arise.   I ask that you evaluate all that.   And I
submit from the evidence that will be presented to you, you will
find the Defendant committed this crime and should be held
accountable.   Thank you.

Ex. B at 9-13.   The bold portions are the statements to which Jones

asserts his trial counsel should have objected.   *See* Ex. N at 58-59.

During closing, the prosecutor argued:

Folks, first of all, I'd like to thank you for paying attention
to the testimony in this particular case.   I would suggest to you
that the evidence that you actually heard from the testimony of
the witnesses is what I set forth for you in my opening
statement, that this is what we expected would come out.   And
what that testimony shows is the charge the Defendant is
facing, the charge of armed robbery. As I Indicated earlier, this
is not a complicated case at all.   It's one that doesn't take very
long.   It's a fairly quick robbery that occurs.

From the testimony of Mr. Erron Lovett and the
Defendant's own sister, a robbery occurred.   He was at the
house, called outside by one of the brothers, gets out there,
he's assaulted and robbed.   Ms. Jones, the sister, she comes
out at the time when it's occurring, sees what's happening, yells

out about doing it and sees her brothers with their hands in the pockets of Mr. Erron Lovett.   As he testified, they stole his property, his cell phone, a wallet and money.

The judge is going to give you some instructions on -- that apply to this particular case.   And one of the things I talked to you about in jury selection and earlier this morning is that my job is to present testimony that establishes certain specific facts which we call the elements of the crime. And there is a thing about the robbery that this is where it does get a little complicated.   I need to spend some time with you on that because it does apply in this particular case.   From the actual evidence presented, I would submit to you, the only issue is what kind of weapon was it that was utilized in the course of this crime.

The things that the State has to prove, first of all, it is the crime of robbery.   And that involves, the State has to show, is from the testimony, this Defendant took property from the person or custody of Erron Lovett, that there was some force or violence or putting in fear that was used in the course of the taking.   The property has to have some value, but it's not any particular value and this taking was with the intent to permanently or temporarily deprive Mr. Lovett of the right to his property.

As the judge will tell you, to make it a robbery, there has to be some kind of a force or violence or putting a person in fear in order to obtain the property. The law does not require the victim to resist to any particular extent.   If the victim was placed in some kind of fear of bodily harm, he does resist. From the testimony you have in this particular case, we have a robbery occurring.   At least two men, the two men we know involved in assaulting Mr. Lovett.   **And in the course of that assault, that robbery, this Defendant is the one that has some type of a weapon.   The testimony of Mr. Erron Lovett, that weapon is a firearm.**

You're going to find that's one of the issues that the Judge will instruct you on.   He's charged with robbery with a firearm, deadly weapon. You're job in taking a look at this evidence is you have to make the determination based upon that testimony. **And I would submit to you, based upon the testimony of Erron Lovett, he was robbed at gunpoint.**   To put it in colloquial term, he was robbed at gunpoint on this particular date.

The judge will tell you the punishment provided involving the crime of robbery is greater if the Defendant carries some kind of a weapon.   And it's in the course of committing it he has to use of some type of a weapon, do something with it. And if you find that the Defendant carried, in the course of committing this robbery, a firearm, you should find him guilty of robbery with a firearm.   Based upon Mr. Erron Lovett's testimony, he says he's out there, this is close quarters, to the head, he understood this was, in fact, a firearm that was possessed by this particular Defendant.

The judge will tell you though that there is a series of lesser included offenses.   That's the one he's charged with. And something for you-all to consider is if you find that based upon your evaluation of the testimony that it was not a firearm but it was some other type of object that would constitute a deadly weapon, the first lesser included offense would be robbery with a deadly weapon, not a firearm.   There is robbery with a firearm as the deadly weapon; robbery with some other weapon, that you would find to be a deadly weapon, but is not a firearm.

The next lesser offense is robbery with a weapon.   This would be some type of nondeadly weapon.   If there is no object, no weapon being used, then the next lesser included offense is robbery.   There is a final lesser included offense that's given to you and that's theft.   By definition, a robbery is a theft.   It is taking something of somebody else's property without their permission.   That's what we normally have as a

theft.   But it's a different type of theft if it's this type that occurred in this particular case which becomes the robbery because it is the use of some type force, violence, assault, or putting in fear.

It would have been a theft, and that would be the charge we're dealing with, if Mr. Lovett's wallet was sitting inside and somebody came in and picked his wallet up and walked out and took it, that's theft.   But this is taking from the person of an individual.   That's what makes it a greater crime as opposed to the lesser crime.   And from the testimony, it was being taken from him by both Mr. Lovett and by the Defendant's own sister. They are digging in the man's pockets, taking his stuff.   So it's a robbery, not a theft.

**It's the State's position, that based upon this evidence, that this was, in fact, an armed robbery, and an armed robbery with a firearm.**   A couple things you can take into consideration in your analysis here is not only what witnesses testified to, but their reactions at times.   Mr. Erron Lovett's testimony was the one brother calls him outside. Come outside and talk. He goes outside and all of a sudden he's got these two guys coming at him, the two brothers. There's a couple other guys, he never does determine who they are.   They are there but, you know, we can't say they are doing anything.   But the two brothers are there demanding he give up his property.   And at first, he thinks -- his reaction is, stop joking, stop messing with me.   And then they make it real and he realizes it is real. They push him back, a gun goes to the head, he's pushed back against the wall, and they start digging in his pockets, start taking his stuff.   The fact that he stands there, if I recall his testimony, he said when they first said that, he kind of put his hands up like, Come on.   Then all of a sudden, it was a little more than just a joke.

And his reaction there, kind of speaks to the fact that we're dealing with a weapon, a weapon of some significance. And as he testified to you, a weapon that was a gun.   Because

what does he do?   He says he balls his fist up but there's no fight going on here.   If these guys are just out there, Hey man, give me your stuff, all this tussle and struggle may have occurred, more likely would have occurred.   But it's very kind of common sense, that when the man has the gun in his hand you realize it's serious, there is no struggle that occurs.   His actions somewhat verify the testimony he gave that this man had a gun in his hand.

There is also verification about this by Scherryl Jones. Number one, I think is important to consider is she's somewhat of a reluctant witness.   This is the sister of the two brothers.   If you recall her testimony when she first comes in, she indicates some reluctance to testify at first trying to do, Well, it's been a year ago.   Then I asked her, What happened?   I can't really remember.   It was a year ago.   I've been in Department of Corrections.   But I'll give the lady credit because she did go ahead and tell us a good bit about what occurred.   So she went -- Jason Smith asked her boyfriend to go outside.   She hears some noise out there, looks out the door and she sees her two brothers digging, the phraseology she used, "digging in Eric Lovett's pocket".

And sometimes there's a bit about how a person's reactions are important.   Her reaction at that point in time, what did she say she did?   She yelled at her brothers to stop. **Certainly, I would suggest to you, strongly verifies what she saw happening was a robbery.**   Her actions then also of what she did, besides yelling "stop" at her brothers, she was the one that went in and called the police.   This wasn't right.   Even though it's her brothers, it's not right they are robbing this man, and she calls the police to come out there.

One of the issues that comes up for you-all in your consideration she testified today her brother Robert had a stick in his hand. That's different than what was testified to by Mr. Erron Lovett.   You can take into consideration her circumstances to make their evaluations, was it a stick or was it

a gun?   **I would suggest to you that based upon the testimony here, it might be quite reasonable that Ms. Jones, Scherryl Jones, be a little bit reluctant to come into court and say her brother had a gun.**   But based upon her reactions, how she acted and what was reported, back then, I submit, you add that to the testimony of Mr. Erron Lovett[], this defendant is guilt[y] of the crime with which he's charged, crime of robbery with a firearm.

We're going to break for lunch, folks.   Before you get all this, we're going to do our argument and the judge is going to give you the instructions after lunch and you'll get an opportunity to eat before you have to deliberate.   Part of the Judge's instructions, and he'll give you what we call a verdict form.   A verdict form is what you look at to make the determination based upon the facts as you find them.   You'll find in the way it's structured we have – he's charged with armed robbery with a firearm, and there will be a check-off there for actual possess or did not actually possess a firearm.

Because one of the issues that comes up, and the judge will tell you, is there is the issue of principal.   A principal is when there is two or more people involved in the commission of a crime they both can be held accountable even if they don't all do the same acts.   And from the testimony, the other brother doesn't have a gun but he can be found guilty also for robbery of a firearm.   The difference is on the verdict form you make the determination, did actually possess or did not actually possess.   You can be found guilty of -- if the partner has a gun – of robbery with a firearm because the two people are involved in the commission of the same crime.   And from the victim's standpoint of view, it doesn't make a whole heck of a lot of difference whether Defendant A or Defendant B has a gun, it's the fact that one of them has a gun pointed at him.   Same crime.   He doesn't really care which one has the gun.   Doesn't make a difference in the crime.   But that is a checkoff for you on your verdict form.

**It's going to be my suggestion, from the evidence, that the verdict should be guilty as charged of robbery with a firearm.**   And then you would check off the actual possession.   Because from the testimony, this is the individual that had the firearm.   There will be what I indicated to you, the lesser included offenses.   If you find that it wasn't a firearm but by based upon the actions of Mr. Lovett that it was an object that caused him to not resist in this way, you could determine it was robbery with a deadly weapon.   Not as a firearm, just a deadly weapon.   You could also find that if it wasn't a deadly weapon it would be robbery with a weapon.

The last one you have for robbery, that's what we call sometimes simple robbery, what we call an unarmed robbery or strong armed robbery, just robbery.   And that's no weapon being involved at all.   From the testimony you have before you, that would not be correct.   There is also the lesser included offense of theft.   And the judge will tell you then if you did that, you'd make a determination whether it was less than 300 or more than 300.   I believe from the testimony the cell phone was worth $450.   But I submit from the testimony that a verdict of theft would not be appropriate based upon the actual evidence that's before you.   And it's based upon the evidence and the law the judge gives you that you make your determination.

From that testimony, from that evidence and from the law, it's the State's position that this man should be held accountable for the acts he decided to do on November the 15th, 2006, he and his brother decided to – don't want to use colloquial term "roll", the boyfriend.   Now he's asked to pay the piper for it and he should be found guilty.

Ex. B at 62-70 (bold emphasis added).   Again, the portions in bold are the

statements to which Jones asserts his trial counsel should have objected.

*See* Ex. N at 59-62.

In Florida, both the State and the defense have wide latitude in
closing arguments.   *See, e.g.,* Ford v. State, 802 So. 2d 1121, 1129 (Fla.
2001); Thomas v. State, 748 So. 2d 970, 984 (Fla. 1999).   In federal
habeas, "[t]he relevant question is whether the prosecutor's comments 'so
infected the trial with unfairness as to make the resulting conviction a denial
of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting
Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).   The comments must
have been improper and have rendered the trial fundamentally unfair.
United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991).

A review of this record does not indicate the prosecutor's comments,
even if questionable, rose to such a level as to result in an unfair trial or
deprivation of due process.   *See, e.g.,* Darden, 477 U.S. at 181 (finding
that prosecutor's comments "undoubtedly were improper," but that was not
enough for habeas corpus relief as the question was whether the
comments "so infected the trial with unfairness as to make the resulting
conviction a denial of due process"); U.S. v. Morris, 568 F.2d 396, 401 (5th
Cir. 1978) ("The purpose of summations is for the attorneys to assist the
jury in analyzing, evaluating, and applying the evidence. . . . The assistance
permitted includes counsel's right to state his contention as to the

conclusions that the jury should raw from the evidence.   Therefore, an attorney's statements that indicate his opinion or knowledge of the case as theretofore presented before the court and jury are permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence.").   Indeed, the prosecutor's comments reflect the evidence the State presented in support of its case at trial.

Jones has not shown that the state court's adjudication of this ground involved an unreasonable application of clearly established federal law or that it based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### Ground 4:   IAC – Investigation

In his fourth ground, Jones asserts defense counsel failed to conduct an adequate pretrial investigation.   ECF No. 1 at 9.   Jones raised this claim in the fifth ground of his Rule 3.850 motion.   Ex. N at 62-67.   The state post-conviction court initially denied the claim:

> **Ground 5:   Ineffective assistance of counsel for failure to investigate.**   Defendant claims that counsel failed to investigate the telephone call that took place between the victim and co-defendant Jason Smith after the robbery occurred. However, the claim does not explain how that failure was an essential fact that would tend to negate his guilt.   Defendant further claims that counsel failed to prove the existence or non-existence of the cell phone or bank card that were allegedly

stolen and failed to disprove the existence of the gun that was allegedly used in the robbery and that had he done so the verdict would have been different.   This claim is too general and fails to state a cause of action demonstrating deficient performance and prejudice to the defendant so as to affect the outcome of the jury's verdict.   Defendant is allowed 60 days to amend ground 5.

*Id.* at 82-83.   Jones thereafter amended his claim.   *Id.* at 170-74.   In

particular, Jones alleged:

> Counsel's performance in failing to hold depositions, in an attempt to inquire every essential element of the alleged crime beyond a reasonable doubt, especially has the burden to overcome, when challenging the legally sufficiency of the evidence, is very heavy on the Defendant.   Counsel had at his fingertips, enough plausible information to make a reasonable investigation necessary.

> For one, depositions of Jason Smith, Erron Lovett, and Scherryl Jones, would have produced impeaching questions considering the evidence of the case was relied an only testimony of the alleged victim [as the single source to testify as to the use of a firearm in the course of the alleged robbery. The items reported by Erron Lovett were never disclosed, placed into evidence, or even taken from the scene of the alleged crime.   An investigation from the accounts of these three on site witnesses would have produced and permitted a reasonable trier of fact to conclude that the Defendant was not guilty beyond a reasonable doubt.   Scherryl Jones was the girlfriend of the alleged victim, Erron Lovett.   She, had counsel made an investigative deposition prior to trial, been able to bring to light her telephone conversation on the alleged phone (cellphone) taken during the course of the alleged robbery. There were no indicative tacks nailing down the fact that a cellphone even existed, nor has there been presented before the trier of fact, a monthly billhead, proving that this phone

existed.

> The phone call by Jason Smith to Erron Lovett just after the alleged robbery, did he call him, reaching him on the alleged stolen cellphone?   Where did he call from, and what phone did he reach him on?   The reason counsel failed to call witnesses as alleged in Ground Six, was simply because he failed to make a reasonable investigation into the facts of the case.

*Id.* at 170-71.   After the evidentiary hearing, the state post-conviction trial court denied post-conviction relief.   Although the order did not specifically address Ground 5, it constitutes a decision on the merits.   *See* Harrington, 131 S.Ct. at 784-85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").   The ruling, affirmed on appeal without opinion, is entitled to deference and review is limited to the record before the state court.   *See* Cullen, 131 S.Ct. at 1388.

Regarding Petitioner's allegations that counsel failed to prove or challenge the existence or non-existence of the cell phone or bank card allegedly stolen in the robbery, the state court had found the allegations "too general and fail[] to state a cause of action demonstrating deficient performance and prejudice to the defendant so as to affect the outcome of

the jury's verdict."   Ex. N at 83.   Petitioner's amended claim does not

appear much, if any, better.   He seems to assert that had counsel

investigated and taken depositions of Erron Lovett (victim), Scherryl Jones

(victim's then-girlfriend and sister of defendants), and Jason Smith (co-

defendant), counsel would have been able to produce "impeaching

questions" to attack the credibility of Lovett regarding the use of the firearm

and the stolen items, which were not recovered, and thereby permit the jury

to find Petitioner not guilty.

As Respondent points out, although the state court did not specifically

address this ground in its order denying relief, the court's explanation

regarding Ground 6, *infra*, and Petitioner's failure to show prejudice

likewise supports the denial of Ground 5.   As the state court found, "[t]he

victim and [Petitioner's] sister both testified that the defendant and the co-

defendant had robbed the victim" and "[t]he identity of the perpetrators was

not an issue in the trial since they were both well known to the witnesses."

Ex. N at 189.   The trial transcript in the record supports these findings.

Ex. B.   In addition, the record reflects defense counsel cross-examined the

victim about the cell phone and the bank card he had testified were taken:

> Q.   No, you said they took from you on November 15th of
> last year was a cell phone?

A.   Uh-huh.   (Affirmative response.)

Q.   Yes?

A.   Yeah.

Q.   I understand it was a Nextel cell phone, correct?

A.   Uh-huh.   (Affirmative response.)   (Nodding head affirmatively.)   Correct.

Q.   And do you remember the phone number of the Nextel cell phone that was taken from you?   Does the number (850) 778-6436, does that sound – would that be the number?

A.   I had so many cell phones, I can't tell you.   I don't remember.

Q.   You don't remember?

A.   I don't remember my number because I don't call it.

Q.   So you were in and out of different numbers for cell phones.   Yes?   You have to say out loud?

A.   Yes.

Q.   You would have remembered what your number was on November 15th, correct?

A.   No.

Q.   On November 15 when you had that cell phone, you didn't know your number?

A.   Oh, at that time, I would have known it, yeah.

Q.   So when you talked to the police that day, you may have given them the correct number, correct?

A.   Yeah.

Q.   And not only was the cell phone taken, you say your wallet was taken?

A.   Yeah.

Q.   Also, you say a little bit of money?

A.   Uh-huh.   (Affirmative response.)

Q.   Sir?

A.   Yes, sir.

Q.   You don't remember how much money?

A.   Not exactly.

Q.   The wallet, there was a bank card in the wallet?

A.   Yeah.

Q.   Sir?

A.   Yes.

Q.   And the bank card was a Bank of America credit card?

A.   Correct.

Ex. B at 26-28.   In addition, defense counsel cross-examined the

investigating officer about the firearm and the cell phone reported as stolen:

Q.   Now, you knew that you were investigating a claim of a robbery, correct?

A.   Yes, sir.

Q.   And you know that a robbery is more serious if there is a firearm involved, correct?

A.   Yes, sir.

Q.   And, certainly, if a witness told you they saw a firearm being used in the robbery, you would remember to put that important detail in your report, would you not?

A.   Yes, sir, most likely.

Q.   Do you see your narrative there recording Scherryl Jones?

A.   Yes, sir.

Q.   Read that to yourself.   And when you get to the part that says, Sherryl Jones told me she saw her brother with a firearm, just indicate to me that you see it.

A.   It does not say that in there under her statement.

. . . .

Q.   Okay.   Is that the voluntary statement given to you by Scherryl Jones on the night of – or sometime during the course of your investigation of this claim of a robbery on November 15th?

A.   Yes, the night of.

Q.   Okay.   She didn't put in there that she saw her brother with a gun, did she?

A.   It does not indicate that, no, sir.

Q.   Now, and of course you talked to Erron Lovett, correct?

A.   Yes, sir.

Q.   And Erron Lovett indicated to you that a cell phone was taken, correct?

A.   Yes, sir.

Q.   And Erron Lovett, to you, identified that cell phone; did he not?

A.   What do you mean "identify"?

Q.   Well he says it was a –

A.   He described it to me, if that's what you mean.

Q.   How about more specifically did he tell you it was a Nextel telephone?

A.   Off the top of my head, I don't recall what brand it was.

. . . .

Q.   I want to hand you what's been marked for identification as Defendant's Exhibit 3 and ask you to look that over and see if you recognize it.

A.   That's the voluntary statement written by Erron Lovett that night.

Q.   And that's a statement he gave to you, correct?

A.   Yes, sir.

Q.   Look toward the bottom of that statement that he gave to you.   See if you find where he indicates it was a Nextel telephone that was taken.

A.   Yes, sir.

Q.   When he identifies the Nextel telephone that was taken, he also gives you the telephone number, correct?

A.   I don't see it here on the statement, no, sir.

Q.   Is it in your report?

. . . .

A.   Yes, sir, it does have a phone number with it.

Q.   What does it say about it?

A.   It says, Nextel cellular camera camcorder cell phone, black/silver with green LED light on the side.   Unknown serial number.   Value of approximately $450.   Number 850-778-6436, I believe it says.

Q.   Okay.   My next question:   Is there an indication that there was a bank card taken?

A.   It says, Unknown bank card.

Q.   Unknown bank card.   Now, did I take Mr. Lovett's statement from you?

A.   No, sir, it's right here.

Q.   Peruse through Mr. Lovett's statement and see if he identifies the bank that issued the bank card.

A.   It says, Bank of America card.

Q.   Bank of America?

A.   Yes, sir.

Ex. B at 46-50.

Jones has not shown that the state court's adjudication of this ground

involved an unreasonable application of clearly established federal law or

that it based on an unreasonable determination of the facts.   *See* 28

U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

## Ground 5:   IAC – Jason Smith

In his fifth ground, Petitioner Jones asserts defense counsel provided

ineffective assistance by not calling his co-defendant, Jason Smith, to

testify at trial.   ECF No. 1 at 9-10.   Jones asserts Smith was available to

testify and would have testified that Jones did not participate in the robbery

and "would have stated that a robbery didn't actually occur."   *Id.* at 9.

Jones raised this claim in the sixth ground of his Rule 3.850 motion.   Ex. N

at 67-74.   The state post-conviction court denied the claim after the

evidentiary hearing:

> The Court finds that the defendant has failed to carry his
> burden as to the allegation in Ground 6.   The credible
> testimony of the defendant's counsel refuted the claims in the
> defendant's motion that the co-defendant was a possible
> exculpatory witness.   The decision by the defense counsel not

> to call the co-defendant who had already entered a plea of no
> contest to the robbery of the victim was a reasonable tactical
> decision.   The victim and his sister both testified that the
> defendant and co-defendant had robbed the victim.   If the co-
> defendant had been called to testify by the Defense, the
> Defense would have had to concede that the crime of robbery
> had been committed against the victim.   The identity of the
> perpetrators was not an issue in the trial since they were both
> well known to the witnesses.   The issue at trial was the
> credibility of the victim's testimony about being robbed.   The
> possible testimony of the co-defendant would have
> corroborated the testimony of the victim that he has been
> robbed.   The Court finds that the defendant failed to establish
> that the omission of the testimony of the co-defendant had
> prejudiced the outcome of the trial.   See Beasley v. State, 18
> So. 3d 473 (Fla. 2009).

Ex. at 188-89.   This ruling, affirmed on appeal without opinion, is entitled to

deference and review is limited to the record before the state court.   *See*

Cullen, 131 S.Ct. at 1388.

The record supports the state court's findings.   In particular, at the

evidentiary hearing, Jones' trial counsel testified that the defense theory

was no robbery had occurred and Smith, by the time of trial, had entered a

plea to the robbery charge, so Smith's testimony would have contradicted

the defense theory:

> Q   Did you have an investigator or anything at that point
> in time that would have gone and taken a statement from Jason
> Smith?
>
> A   No.

Q   At the time of the trial in this particular case, was the defense being presented that there was not a robbery that occurred?

A   I seem to recall that that was the defense.

Q   So the defense was no robbery, all right.

A   Probably so.

Q   Yeah.

A   I'm sure the record would speak for itself.

Q   Okay.   As Mr. Jones just specifically testified, what he wanted to testify is that there was no robbery.

A   Okay.

Q   Okay.   And the fact that Jason Smith, I think I got his name right, had previously entered a plea to committing that robbery, would that present a problem for you in calling him as a witness on a claim that no robbery occurred?

A   Yes.

Q   In what way?

A   Well, then the witness would have proven the robbery that Mr. Jones said did not occur.

Q   At that time had you any – had Mr. Robert Jones given you any information or a request to call Jason Smith as a witness?

A   I don't recall.

Q   If he had, would you have made some arrangements to have Jason Smith transported and called as a witness?

A   If Mr. Jones gave some indication that Smith could be helpful to the defense, then I would have had contact with Mr. Smith and talked to Mr. Smith about what his potential testimony would be.   I would not bring Mr. Smith under subpoena to Gadsden county without knowing what he's going to say for fear that he might hurt Mr. Jones, and I wouldn't want him accessible to the State.   So then if he is harmful, then the State would use him.   So I would want to talk to Mr. Smith.   If he's got something favorable to the defense position then I would have brought him.

Q   Does your file reflect anything from Robert Jones indicating that Mr. Jason Smith would have any information that would be favorable to the defense?

A   I don't believe so.

Ex. P at 26-27; *see id.* at 28-33.

Jones has not shown that the state court's adjudication of this ground involved an unreasonable application of clearly established federal law or that it based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

### Ground 6:   IAC – Cumulative

In his sixth ground, Jones alleges cumulative IAC.   ECF No. 1 at 10-13.   The Eleventh Circuit has rejected this argument in a § 2254 proceeding.   *See* Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565

(11th Cir. 2009) (explaining "[t]he Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim" but "has held, in the context of an ineffective assistance of counsel claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt" (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984))). Moreover, as each individual ground fails, this ground likewise fails.

## Conclusion

Based on the foregoing, Petitioner Robert Jones is not entitled to federal habeas relief.   The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.   *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.   The Clerk shall substitute Julie L. Jones for Michael

D. Crews as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on June 21, 2016.


**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this report and recommendation, a party may serve and file specific, written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**